The first case for argument this morning is 21-1856, Pulse Electronics v. U.D. Electronic Corporation. Mr. Chen, whenever you're ready. Thank you, Your Honor. May it please the Court. My name is Lee Chen, and I represent the appellant, Pulse Electronics. Your Honors, the District Court made significant legal errors when it ruled on summary judgment that there is no evidence of infringing activity by U.D.E. in the U.S. The record is extensive, and the parties differ on what inferences should be drawn from that record. But on summary judgment, the District Court was required to draw the inferences in favor of Pulse, the non-movement. This it did not do. Instead, the District Court made findings of fact against Pulse, the non-movement in the summary judgment proceeding, on virtually every contested issue. In so doing, the District Court turned the summary judgment standard on its head, and its ruling on issues 1, 4, and 5 must be reversed. Well, you used the word contested, and that can mean several things. I mean, yeah, okay, I'm not going to quibble. Maybe it was contested. But in order for it to really be contested, you have to put forth something that at least gives you the inferences. And the District Court went through really each piece of evidence and analyzed it and concluded that that evidence didn't do it for you. So it's no longer—it may be contested, but it's no longer defeat summary judgment if the evidence just isn't there. Thank you, Your Honor. I think that's an important point, and I would submit that the evidence was there, and that the District Court made findings on some of that record. And if I may, I'll go through some of this record. Well, I'd be happy to, because I mean, his opinion is so thorough. So if you want to pick out a few examples where you think that he got his analysis of the facts and the evidence wrong or his conclusions were not supported. Certainly, Your Honor. I'll begin with the inducement infringement issue. Now, it's undisputed that UDE was aware of the patent suit and Pulse's infringement claims as early as October of 2016 and February of 2017. The record also shows that UDE issued numerous invoices showing its accused ICMs were ultimately destined for the U.S. This is not so much a point about the— Can you identify and let me look at— Of course. I don't know. What's your best invoice? I don't care if it's—I'm not forcing you to choose one. I want to look at an invoice that you think is important. Yes. Your Honor, pages 2961 through 63 of the record. Which volume is this? Three. Yes. I'm sorry. Give me the number again. 2961 through 63. And I realize this is all in yellow, which means presumably somebody thinks this is confidential. So you may have some trouble viewing what's absolutely essential, but just talk to me about the specifics. I think I can talk about this record without mentioning— Well, I'll try to do my best in that regard. So the particular entity—so I would first point out that these invoices, along with many others, show the ultimate destination for the accused UDE ICMs were in the U.S. So where—by line number or something, where do you think that is shown? Above the telephone number? Is that the line? I believe so, Your Honor. Yes. Right above the telephone number, it shows the specific street address in the United States. Now, the entity—and there are many others that show similar street addresses in the U.S. And this is not a point about the bill to or whether or not title was transferred at a certain point, but it shows that these UDE-issued invoices—these were invoices issued by UDE, so it must have known where its accused products were ultimately destined. Now, the identity— And there's no dispute that these were accused products? There's no dispute. The G-series, Your Honor, under sellers PN, it lists the product number for the seller. The following question comes up with respect to at least some of the other invoices, too. I don't think it's confidential to say that the word forwarder appears on here. Why is—what is—is the address where UDE is shipping it to, or is that simply the address, the home address of the forwarder, which is named in the line above, but the delivery to the forwarder is not in the U.S.? It's in Hong Kong. That I don't think is confidential. I think it's the ultimate destination for the products, Your Honor. The address is the ultimate destination. How do you know that? I took this and some other ones, like a 2911, to be that the address line was the home address of the forwarder, but the delivery is to the forwarder in Hong Kong, and then the forwarder does whatever the forwarder is going to do with it. Why is that? So this is in part an inference on my part, Your Honor. My understanding is this entity is in the United States. I don't believe this entity has a presence in Hong Kong. But up above it says shipped from Hong Kong to Hong Kong. What does that mean? My understanding is that's where the title transfer took place. Isn't that where delivery took place? But the ultimate destination, even if that's where delivery took place, Your Honor, this shows the ultimate destination for the accused products is actually the U.S. And there's another piece of fact that I believe ties it in, especially in the context of inducement. This particular... I'm sorry, Your Honor. So if a party, a foreign party, an Asian party, sells a product to another Asian party in Asia, but the seller of that product knows that the Asian buyer is ultimately going to ship that purchased product along with a bunch of other things to America, is that enough to make the seller of that product viable for induced infringement? Not by itself, Your Honor. In this case, we don't think we need to focus only on that piece of fact. And that is because this particular entity... Right, so we agree that that would be insufficient. So even if we were to agree with you that this invoice suggests that the sold and purchased product in Hong Kong ultimately enters the United States, you've got to prove even more than that. Yes, and... You still have missing elements to prove 271B induced infringement. Yes, Your Honor. And the missing piece, I would submit, it comes from UDE's own website, which lists its U.S. agents and distributors. And this entity that purchased the accused ICMs, the accused UDE ICMs, is listed and promoted by UDE on its own website as a distributor of UDE products. And we believe that given UDE's knowledge of the patents in suit, given its knowledge of PULSE's infringement position, for UDE to have sold products to an entity that it knew was bringing those accused products into the U.S., and for UDE to have actively promoted that entity for the purpose of marketing UDE products, that satisfies the elements of inducement infringement. Your Honors, the... And can you... This is, I guess, getting back to Judge Post's... tying this to the district court. What specifically, and if you know the page, on what page did the district court address what we've just been talking about? These particular... So, the district court, in analyzing these invoices, seemed to focus strictly on whether or not these invoices constitute direct infringement by UDE. And did not... And what did the court say about that? The court basically... I'm sorry, Your Honor. I'd be happy to submit a letter. The district court basically said that the bill to NC being in the U.S. is not dispositive. That the ship to information is also not dispositive, given the transfer in Hong Kong. That's... And that title transferred and so forth in Hong Kong. So that UDE is not liable for direct infringement for these invoices. That these invoices do not show UDE's direct infringement. We would contend, given that these invoices show the accused UDE products did end up in the U.S., that this shows direct infringement by somebody. And that's all that's necessary in the context of inducement infringement. And what's the JA site for the website you're talking about? The UDE website? Yeah. It's... I have the website printouts. Apologies, Your Honor. And... The... I believe it's page 1757 of the record. Where UDE lists this particular entity as UDE's U.S. district defense. Now, Your Honor, the record also shows that U.S.-based EMS companies work with UDE to develop material requirements planning documents. And this is shown in page 3022 of the record. Where this particular U.S.-based EMS company working with UDE developed this material requirements planning document. And it shows specific U.S. locations in California. Where UDE's accused products would be sent. But this is the kind of document, Your Honor, that can only be generated with UDE's participation and involvement. It is not credible for UDE to say it has no knowledge of its accused products entering the U.S. market given this materials requirements planning document. I'm sorry, you're pointing me to JA3022? Yes. Where's the smoking gun here? Your Honor, if you could look at the last three rows on that page. Okay. And under facility, it shows the city and state in the United States. Under facility. Towards the bottom of the chart. Yes, the last three rows. And in the page preceding, it lists the products that are sold to this particular EMS company in the U.S. Did you present this to the history department? The district court? Yes, the... Or is this the one where the district court said this wasn't really presented to him? I don't have the page reference, Your Honor, but as Your Honor knows, I came to this case kind of late. The... Well, the difficulty I'm having, Your Honor, your time's almost up, so I don't want to invite you to spend another 20 minutes doing this, but where I started was we've got a almost 100-page district court opinion, and your critique here is that he didn't have the proper inferences and he reweighed the evidence and he resolved factual disputes. And so it would be helpful for me if you could tie what he said to some of the stuff you've talked about today so we could see where your view is that his error, he didn't appropriately deal with this evidence. So where are the corresponding portions of his opinion where he addresses these? Your Honor, my apologies, I don't have the specific page reference from the district court opinion, but... And I would be happy to submit a supplemental... Well, maybe you can come back and rebuttal and have that, if it doesn't distract you from listening to the other side. Okay. And in addition to the issue of whether the invoices... Your Honor, I see that I'm out of time. Okay, I will just make one other... It says, I think we can ask Red when they get up here, but I think in their brief, they say that the documents that you've just discussed with Judge Chen weren't in the record. Weren't presented to the district, were not presented to the district court. Do you have any information about that? The invoices were certainly... No, I'm talking about the stuff that Judge Chen was just looking to. 3021... We can ask Red about it, maybe they can confirm it, if you're not sure. Thank you, Your Honor. Thank you. We'll restore some rebuttal time from the other side. May I please report? I am John Schnurr of Perkins Coie, and let me just give you that reference that Judge Chen requested. It's in Appendix 63. Note 21 refers to Judge Benitez's noting that the evidence that was presented was not before him, and so he did not have the opportunity to consider it. But let me just turn back to those invoices, because those are important. Because it shows, actually, the lack of evidence that Pulse put forward to prove its case, and why Judge Benitez provided a thorough opinion, finding that none of the evidence that was presented was sufficient to overcome the summary judgment motion. And those invoices, as Judge Toronto pointed out, indicate a... What's clear, and I want to refer you to Judge Benitez provided a nice table, is summary judgment order at Appendix 116 to 118, where he tabulates all the shipments from and to by UDE, as well as the forwarding address and the terms, trade terms by which those invoices reflected. And what he made clear was that all shipments by UDE were by truck from Hong Kong to Hong Kong. And clear across all 115 invoices was that UDE shipped from and delivered to all the UQ's products to Hong Kong. And from there, the customer... It's unclear where the customer... What they did with those products. Because from those invoices, what we have is nothing in the record what those invoices mean. Because Pulse chose not to obtain further information on those invoices. But based on a fair reading of those invoices, underneath the 40 information of the forwarder, you have is shipped to the forwarder, which is clear from the evidence that the products from UDE were shipped to the forwarder in Hong Kong. And as Judge Toronto pointed out, the address there, a fair reading, is that it's simply the address of the forwarder. Not that the forwarder shipped... Not that UDE shipped its products to that forwarding address. What's clear in the record, and as Judge Benitez held, is that all products shipped by UDE was from Hong Kong to Hong Kong. What about Appendix Page 1757, which lists... This doesn't seem to be yellow... lists as USA Distribution on the East Coast, the same company that appears in 2961 as the forwarder? Sure, Your Honor. Now, first of all, this was the first time that argument was presented. It was never presented before Judge Benitez, never presented in any of the briefs. That simply indicates from the website that MCN is a distributor. It does nothing more. It does not connect the dots between what products UDE may supply to the distributor, because UDE supplies many products beyond ICMs, let alone the accused multi-gig 2xN ICMs. And so there's a failure to connect the dots. What we have on the invoice, what was shown, I think, in Appendix 2961, was that accused ICMs were delivered to MCN in Hong Kong. What MCN did with those, we don't know. It's not on the records. What we have is a reference on UDE's website that MCN is a distributor. And you don't think it is a available inference to the finder of fact that when you give this forwarding company these goods and you list them as your USA distributor that in the absence of anything else, the jury couldn't find that you knew where those things were destined for. And that's with respect to inducement? Yes, both halves. At least two of the three halves of the debt. I think it takes more of a leap of faith. It's more of a speculation which products did the distributor actually sell in the U.S. Because there's no evidence that MCN sold any of the UDE products other than a reference on a website that's the distributor. There is no evidence in the record that MCN sold any UDE products let alone the accused UDE products. What's in the record is an invoice of accused ICMs delivered to MCN in Hong Kong. That's it. That is, I think, speculation or a speculative inference that a jury would have to make. If there was evidence perhaps that MCN actually sold accused ICMs in the U.S. that there could be an inference. So I take your point that this UDE webpage and in particular the piece that's at A1757 that says MCN Electronics on the East Coast is for USA distribution was not relied on and so maybe we can ignore it. But let's assume we're going to attend to that. Just that assumption. Yes, Your Honor. Really, that's not enough to support an inference that what was given to MCN in Hong Kong MCN being the U.S. distributor was distributed in the U.S. I think it's not a fair inference. I think it causes speculation because there's no evidence what MCN actually distributes. Just because they receive goods we have no evidence that MCN only distributes in the United States. Do we have contrary evidence? Well, there's simply no evidence other than that MCN is on UDE's website. We don't have any evidence that that is in fact correct. That is in fact true that MCN is a distributor. Could you be saying that we know perhaps that UDE is distributing some products through MCN on the East Coast of the United States but we don't know if it's the accused products? If you hold that the UDE website is in fact truthful because there is no questions asked about the website pages about are these current distributors? Do they in fact distribute UDE products? Do they in fact distribute 2xN multi-gig? There's no questions of that in the record. There was no questions asked of any deposition and there's definitely no evidence of that in the record. So what we have is UDE MCN is identified as a distributor on a website. We don't know if in fact that is the correct website. We don't know in fact what it distributes. And then we have an invoice indicates concerning accused ICMs being delivered to MCN in Hong Kong. We have no information about what MCN does beyond if they distribute elsewhere in the world. There's nothing in the record. That is the problem in this case. There is not sufficient evidence presented by Pulse to oppose a summary judgment ruling. And whether it's a fair inference I don't think it is. But ultimately your honors will make that decision because I think there's too many inferences you have to make in order to reach the conclusion that the products as shown in appendix 2963 that were delivered to MCN in Hong Kong actually made its way to the United States. Do you know what SHIP-2 means in those invoices? The SHIP-2 under the forwarding address? There is no evidence what that means. Judge Benitez pointed that out. I see. If I'm asking you do you know what that means? I do not know what that means. My understanding based on how I based on my personal experience what's up at the front UD ships from and ships to by truck from Hong Kong to Hong Kong in every single invoice. The forwarding information my conclusion is consistent with Judge Toronto's in the sense that identifies basically who the forwarder is and what their address is. Not that that's the location that the forwarder actually ships the products that it receives in Hong Kong to where it ultimately decides to go. There's no evidence what these customers where those customers sent to if they sent those products anywhere. There's no evidence in the record. That's the problem in this case. And I had some other issues to discuss about but it was not brought up in in the opening argument so I don't find a need to present those unless your Honours have questions I will concede my time. I think there was a personal attorney declaration or two that Yes Your Honour I can that asserted that they purchased a product in the United States containing the UDE ICM Yes Your Honour so there was in opposition to the summary judgment motion followed by UE Paul provided a declaration from his trial counsel Mr. Kaczynski in which he ceremonially stated a mere allegation that I purchased with no supporting evidence of that but I purchased a Juniper switch and a Cisco switch and as we noted in our briefs that the I think it says I purchased it in the United States Yes Your Honour which could mean several different things but it does say that it does say that so set aside the fact whether that evidence is admissible the mere allegation is insufficient I believe to create a trouble issue of fact that he purchased it in the United States as whether there was an offer for sale or sale or even an importation of the product into the United States when then you look at the product the Juniper switch it I'm sorry did you just finish that point Yes Your Honour how is it that if the declarence assertion is admissible would you assume that that is insufficient as a matter of law to indicate that it was sold to him in the United States there was no indication in the allegation that it just said I purchased Cisco Juniper switch in the United States from whom that would purportedly be the direct infringer there is no indication who that was for what price if he purchased it he purchased it from somebody that person would be called the seller assume in the United States means the seller was selling it in the United States I'm sorry I'm Your Honour I guess I'm more baffled by the term purchase what does it mean there is no indication I purchased for X amount of dollars there is no indication I purchased from X whoever it was this switch there is nothing other than this mere allegation of I purchased in the United States that's it and it came from an attorney that was never identified as a witness and any initial disclosures I understand the admissibility point I understand the point that he might have bought it from somebody who you know UDE had no knowledge that had ever acquired these things and so the the non-direct infringement part of inducement might not be established but I'm a little when you put aside admissibility and focus just on whether somebody sold this thing to this guy in the United States I'm having some trouble understanding how there's a problem with that because I don't believe I don't know what purchase means in this context get the fact that there is no supporting evidence this to me it's not sufficient to indicate what purchase meant no invoice no record of it it's just a bare assertion a conclusion and as we all know we have disputes about what a sale means what could purchase mean other than you exchanged something for something and get the good would bought be better would bought be clear enough understanding your struggle well my struggle would be well for there to be a sale offer acceptance adequate consideration so at the very least what was the adequate consideration that was conveyed to indicate to at least this attorney who's advocating for his client that they would constitute a purchase I don't have anything of an offer acceptance or more importantly indication what adequate consideration for this attorney to reach the conclusion that a purchase was made in the United States no no you're not the court more focused on his concerns whether this was a miss able coming from an attorney that was never disclosed as a witness I'm making an argument if you consider it setting aside the miss ability issues what do you have you still have issues about whether this actually is sufficient evidence to indicate that there was in fact an importation or sale in the United States setting that aside then what is actually shown by these products with the Juniper switch as we said in our brief it indicates there is a Juniper switch in fact it looks like a competitor ICM Molex doesn't one of the either the Cisco or the Juniper item purchased isn't there a picture in the record of the unit with a Juniper switch and the problem with that one it goes back well there's a picture but it goes back to all the other issues the emissibility of the declaration the there's no deposition taken of Cisco there's no basis for which that table could be admitted to evidence so what we have is concluded there's no basis based on this constituted sale of a product in the United States and I've done with your honor with the time I have allotted any further question will restore three minutes your honors so with regard to the page 30 22 of the record judge Bonita said he didn't consider it because it was not attached to the seal record the apart from what we've discussed with regard to the invoices in the actual units the record shows that the testimony of Mr. Chris Chen he admitted multiple times that UDE sends the accused products or there's a possibility of UDE sending the accused products into the U.S. for the purposes of providing samples and those admissions can be  pages 16, 19 and 31. I'm sorry this UDE witness confessed to sending these accused products into the United States? He admitted to the possibility of it. Yes, your honor. The possibility. Yes. What does that mean? I don't know, but it's possible? He said yes, there's a possibility of it. And this was also further confirmed in the response in its briefing. And that response is I believe on page 21, 11 through 12 of the record where UDE admits in rare instances it may have knowledge of its products entering the United States. And these testimonies consisted Was there a connection drawn between products and the accused products? So the first instance in which Mr. Chen made the admission, the question was not focused on the accused products, but we would suggest your honor, his answer makes clear. His answer was confined to accused products. In the second instance, the Q&A did pertain to accused products. And the two instances are at pages 16, 19, at page 30, line 8 through page 31, line 2 of that deposition transcript. And then page 31, 41 of the record starting at page 46, line 2 through 22. Almost at the end. Any wrap-up comments? I would further note that UDE's admissions are consistent with the testimony of a U.S.-based EMS company who acknowledged that in every instance their customers would demand samples. Did you depose any of the EMS company employees? This one, yes. This EMS deposition is at page 32, 15 of the record. At page 52 of the deposition beginning line 24 through 22, line 3,       line 7, line 8, line 9, line 10, line 11, line 12, line 13, line 14, line 15, line 16, line             23, line 24, line 25, line 26, line 27, line 28, line 29, line 30, line 31,        55, line 56, line 57, line 58, line 59, line 60, line 61, line 62, line 63, line 64, line 65, line             72, line 73, line 74, line 75, line 76, line 77, line 78, line 79, line 80, line 81,    83,   line   86, line 87, line 88, line 89, line 90, line 91, line 92, line 93, line   94, line 94 .